**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| TAMARA TONETTE JOHNSON,<br><br>Plaintiff, *pro se*,<br><br>v.<br><br>SAFEWAY FOUNDATION/ ALBERTSONS COMPANIES FOUNDATION,<br><br>Defendant. | Civil Action No. 25-cv-00783-LKG<br><br>Dated: September 9, 2026 |

**MEMORANDUM OPINION**

## I. INTRODUCTION

In this civil action, the Plaintiff *pro se*, Tamara Johnson, brings common law negligence and intentional infliction of emotional distress claims, and disability discrimination and retaliation claims, under the Americans with Disabilities Act ("ADA") and the Maryland Fair Employment Practices Act ("MFEPA"), against her former employer, Defendant Safeway Foundation/Albertsons Companies Foundation ("Safeway"). *See generally* ECF No. 3. The Defendant has moved for summary judgment on the Plaintiff's claims, pursuant to Fed. R. Civ. P. 56. ECF Nos. 20 and 20-1. The Plaintiff has also filed a motion for "a status update." ECF No. 24. The Defendant's motion for summary judgment is fully briefed. ECF Nos. 20, 20-1, 22, 22-1, 23 and 25. No hearing is necessary to resolve the motion. *See* L.R 106.5 (D. Md. 2025). For the reasons that follow, the Court: (1) **GRANTS** the Defendant's motion for summary judgment (ECF No. 20); (2) **ENTERS JUDGMENT** summarily in favor of the Defendant on the Plaintiff's claims; (3) **DENIES-as-MOOT** the Plaintiff's motion for status update (ECF No. 24); and (4) **DISMISSES** the complaint.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

In this civil action, the Plaintiff brings Maryland tort claims and ADA and MFEPA disability discrimination and retaliation claims against Safeway, arising from her employment at Safeway. *See generally* ECF No. 3. Specifically, the Plaintiff asserts the following claims against Safeway in the complaint: (1) negligence (Count I); (2) intentional infliction of emotional distress (Count II); (3) failure to accommodate under the ADA and MFEPA (Count III); (4) hostile work environment under the ADA and MFEPA (Count IV); and (5) retaliation under the ADA and MFEPA (Count V). *See id.* As relief, the Plaintiff seeks to recover monetary damages from the Defendant. *Id*. at Relief Requested.

<u>The Parties</u>

Plaintiff Tamara Johnson is a resident of Maryland and former employee of Safeway. ECF No. 3 at ¶ 1; ECF No. 20-1 at ¶ 1.

Defendant Safeway is a California nonprofit public benefit corporation, with offices located in Maryland. ECF No. 3 at ¶ 2.[2]

<u>The Plaintiff's Employment History</u>

The facts in this case are, for the most part, undisputed. The Plaintiff was employed by Safeway as a service clerk at Safeway's #1579 from July 13, 2022, until November 13, 2022. ECF No. 25-1 at 52 (Def. Ex. 1, Deposition of Tamara Johnson ("Pl. Dep.") at 49:7-8); *see also* ECF No. 25-1 at 67 (Def. Ex. 2, Declaration of Amanda Gayle ("Gayle Decl.") at ¶ 3); ECF No. 25-1 at 71 (Def. Ex. 3, Declaration of Alison N. Davis ("Davis Decl.") at ¶ 3); ECF No. 25-1 at 74 (Def. Ex. A, Plaintiff's Resignation Letter). During her employment, the Plaintiff reported to the Store Director, Amanda Gayle. *Id.* at 23 (Def. Ex. 1, Pl. Dep. at 20:13-15); ECF No. 25-1 at 67 (Def. Ex. 2, Gayle Decl. at ¶ 3).

---

[1] The facts recited in this memorandum opinion are taken from the complaint; the Defendant's statement of undisputed material facts; the exhibits to the Defendant's motion for summary judgment; and the Plaintiff's response in opposition to the Defendant's motion and exhibits attached thereto. ECF Nos. 3, 20, 20-1, 22, 22-1, 22-6 and 25-1. Unless stated otherwise, the facts recited in this memorandum opinion are undisputed.

[2] Safeway states in its motion for summary judgment that the proper name of the Plaintiff's employer is NAI Saturn Eastern LLC, which is an indirect subsidiary of Albertsons Companies. ECF No. 20-1 at 7 n.1. The Safeway Foundation is a part of the Albertsons Companies Foundation. *Id.*

The Plaintiff was assigned to work in the deli. *Id.* at 20 (Def. Ex. 1, Pl. Dep. at 17:12-16) (The Plaintiff testifying that she was a deli associate). And so, the Plaintiff's duties included: preparing food for the hot bar, cleaning and sanitizing the kitchen area and cooking utensils, packing and organizing the freezers and refrigerators, stocking the floor, and other related duties as assigned by her manager. *Id.* at 20-21 (Def. Ex. 1, Pl. Dep. at 17:17-18:8) (The Plaintiff testifying that these were her duties as a deli associate).

During her employment, the Plaintiff was scheduled to work four to six-hour shifts. *Id.* at 22 (Def. Ex. 1 Pl. Dep. at 19:3-8) (The Plaintiff testifying that her shifts were from four to six hours). On October 4, 2022, the Plaintiff requested to work either a morning shift, or from 11 a.m. – 4 p.m. on Thursdays and Fridays, in a note to the Deli Supervisor, Lynn Lam. ECF No. 11, Pl. Ex. at 38 (note from the Plaintiff to Ms. Lam). The Plaintiff states in the note to Ms. Lam that the reason she is making this request was that she had started a second job to earn more money to take care of her mother. *Id.* (The Plaintiff stating in the note to Ms. Lam that she "need[s] extra money to take care of [her] mother").

It is undisputed that the Plaintiff submitted a schedule request change form to Ms. Gayle. ECF No. 25-1 at 27 (Def. Ex. 1, Pl. Dep. at 24:14-19) (The Plaintiff testifying that, "I filled out a form request that was approved by an assistant manager"); *see generally* ECF No. 22-1. It is also undisputed that Ms. Gayle denied the Plaintiff's request. ECF No. 25-1 at 68 (Def. Ex. 2, Gayle Decl. at ¶ 13) (Ms. Gayle stating in her declaration that the Plaintiff's request to change her schedule was denied, because she was trying to limit her hours on days when the store was busier); *see generally* ECF No. 22-1.

<u>The October 2022 Meeting</u>

In October 2022, the Plaintiff had a meeting with Ms. Gayle. ECF No. 25-1 at 68 (Def. Ex. 2, Gayle Decl. at ¶ 8) (Ms. Gayle stating in her declaration that the Plaintiff met with her in late summer or early fall of 2022 to talk about Ms. Lam's management style and changing her schedule); ECF No. 25-1 at 27 (Def. Ex. 1, Pl. Dep. at 24:1-6) (The Plaintiff testifying that she remembers requesting a meeting in October 2022). During this meeting, the Plaintiff was joined by Terrylee Price, an Employment Specialist for Vocational Support Systems, Inc., and LaVita Sterling, a shop steward at Safeway. *Id*. at 68 (Def. Ex. 2, Gayle Decl. at ¶¶ 9-10) (Ms. Gayle stating in her declaration that Ms. Johnson was accompanied to the October 2022, meeting by a man from a disability organization and LaVita Sterline).

During the meeting, the Plaintiff raised concerns about Ms. Lam's management style. ECF No. 25-1 at 39-40 (Def. Ex. 1, Pl. Dep. at 36:6-13 and 37:13-16). In this regard, the Plaintiff stated that Ms. Lam left to-do lists for employees on occasion, *id*. at 40 (Def. Ex. 1, Pl. Dep. at 37:13-16), and that Ms. Lam: (1) was intimidating, rude and harassing her; (2) throwing things in the sink next to her; (3) making loud shattering noises. *Id.* at 39 (Def. Ex. 1, Pl. Dep. at 36:6-13). The Plaintiff also stated that Ms. Lam was following her around in the Deli and causing her to drop things. *Id.* at 39 (Def. Ex. 1, Pl. Dep. at 36:14-20).

To support these allegations, the Plaintiff also attaches a letter to her response in opposition to Safeway's motion for summary judgment by Ms. Sterling, dated March 28, 2024. ECF No. 22-6 at 22 (Sterling Letter). In this letter, Ms. Sterling states that she was asked to attend a meeting in November of 2022[3] with Ms. Johnson, Ms. Gayle and Terrylee Price of Vocational Support Systems. *Id.* Ms. Sterling also states that the Plaintiff asked for a member of the Safeway security staff to leave the meeting, because she wanted to talk about "private matters regarding her work hours, disability needs, and unfair treatment bullying and harassment while working." *Id.* But Ms. Sterling states that this individual was allowed to stay in the meeting. *Id.*

In addition, Ms. Sterling states that, after the meeting, the Plaintiff came to her and said that Ms. Lam had her clean the industrial oven in retaliation for the Plaintiff's complaint to Ms. Gayle regarding Ms. Lam's mistreatment toward the Plaintiff. *Id.* Lastly, Ms. Sterling states that the Plaintiff indicated that Ms. Lam snatched things out of her hands and threw items in the sink near her, triggering the Plaintiff's anxiety. *Id.*

The Plaintiff alleges that she engaged in ADA-protected conduct during the October 2022 meeting, because she requested the meeting to discuss "the discrimination, hostile treatment, and need for accommodations." ECF No. 22-1 at 2. The Plaintiff also alleges that she: (1) "reported harassment and intimidation by Manager Lynn;" (2) "disclosed her disability and requested privacy;" and (3) requested a scheduling accommodation to maintains second job" during this meeting. *Id*. at 3.

It is undisputed that the Plaintiff did not file a grievance regarding her concerns about

[3] Ms. Sterling's letter states that the meeting occurred in November of 2022, but the Plaintiff alleges that the meeting occurred in October of 2022. ECF No. 3 at ¶ 5; ECF No. 20-1 at ¶ 15; ECF No. 22-6 at 22 (Sterling Letter).

Ms. Lam's management style. ECF No. 25-1 at 49 (Def. Ex. 1, Pl. Dep. at 46:16-19) (The Plaintiff testifying that she did not file a grievance because she was asked to clean the bakery oven and chicken racks); *see generally* ECF No. 22-1. But, the Plaintiff did request that Safeway change her work schedule, so that she could work two jobs and afford to pay for dental care. ECF No. 25-1 at 36-37 (Def. Ex. 1, Pl. Dep. at 33:12-34:3) (The Plaintiff testifying that she needs a schedule change, "so that I can work two jobs and afford to pay my dental.").

<u>The Oven Cleaning Assignment</u>

In the Fall of 2022, Ms. Lam asked the Plaintiff to clean the chicken rack and the tray for the Bakery Department's oven (the "Oven Cleaning Assignment"). *Id.* at 41-44 (Def. Ex. 1, Pl. Dep. at 38:5-39:10, 40:3-13 and 40:18-41:8) (The Plaintiff testifying that she was assigned to clean the chicken racks in the bakery department's oven, which was being used by the deli). While the evidence does not establish the exact date when the Plaintiff received the Oven Cleaning Assignment, the parties do not dispute that this assignment occurred after the October 2022 meeting. *See generally* ECF Nos. 20-1, 22-1 and 25-1.

The Plaintiff expressed confusion about why she needed to clean the chicken rack for the Bakery Department's oven to Ms. Gayle. ECF No. 25-1 at 45 (Def. Ex. 1, Pl. Dep. at 42:2-8) (The Plaintiff testifying that she told Ms. Gayle "I am not a slave, and you need to contract somebody out to clean the bakery oven. Your oven has been broke before you even hired me. And now, you're giving me impossible tasks to do."). Ms. Gayle explained to the Plaintiff that it was only fair for the Deli team to clean the oven and chicken racks, because the Deli Department had been temporarily using this oven until a new Deli Department oven was procured. *Id.* at 68 (Def. Ex. 2, Gayle Decl. at ¶ 14). And so, the Plaintiff completed the Oven Cleaning Assignment and continued to report to work thereafter. *Id.* at 50 (Def. Ex. 1, Pl. Dep. at 47:1-11) (The Plaintiff testifying that she continued to come into work after cleaning the bakery oven).

The Plaintiff alleges that she experienced a panic attack as a result of the Oven Cleaning Assignment. ECF No. 22-1 at 3. In this regard, it is undisputed that the Plaintiff did not request time off from work, or inform Safeway's management that she experienced a panic attack, as a result of the Oven Cleaning Assignment. ECF No. 25-1 at 50 (Def. Ex. 1, Pl. Dep. at 47:1-11) (The Plaintiff testifying that she did not request time off after cleaning the oven); ECF No. 25-1 at 68 (Def. Ex. 2, Gayle Decl. at ¶¶ 17-18) (Ms. Gayle stating in her declaration

that the Plaintiff never told that there was a medical reason that required a change to her schedule or duties and that she never told her that Ms. Lam's interactions with the Plaintiff were triggering her anxiety or panic attacks); *see generally id.* But the Plaintiff alleges that this assignment constitutes retaliation by Safeway. ECF No. 22-1 at 3.

The Plaintiff further alleges that she continued to experience harassment, "escalating" intimidation and "unwarranted" changes to her work schedule following her complaints. *Id.* at 3-4. To support this allegation, the Plaintiff attaches a statement by Angela Williams, the Plaintiff's therapist, dated November 7, 2025, to her response in opposition to Safeway's motion for summary judgment that states that the Plaintiff contacted Ms. Williams while at work on November 3, 2022, and said that her anxiety had been triggered by the demands of her supervisor to clean an oven. ECF No. 22-6 at 21 (Williams Letter). Ms. Williams also states in this letter that the Plaintiff told her that her supervisor had taken something out of her hand and threw items in the sink next to the Plaintiff. *Id.* In addition, Ms. Willams states that the Plaintiff called her again on the same day and informed her that she had put in her two-week's notice, because the Plaintiff felt that she could not continue working at Safeway. *Id.*

But Ms. Gayle acknowledges that the Plaintiff never expressed concerns to her about: (1) being treated differently because of a disability; (2) that her work assignments were worse, because of a disability; (3) there being a medical reason that required a schedule change or change to her duties; or (4) her interactions with Ms. Lam triggering a panic attack. ECF No. 25-1 at 68-69 (Def. Ex. 2, Gayle Decl. at ¶¶ 15-18).

<u>The Plaintiff Leaves Safeway</u>

On November 4, 2022, the Plaintiff notified Safeway that she was resigning from her position, effective November 13, 2022, because she had another job. ECF No. 25-1 at 74 (Def. Ex. A, Pl. Resignation Letter). The parties disagree about the characterization of the termination of the Plaintiff's employment.

In this regard, the Plaintiff contends that the termination of her employment with Safeway was a constructive discharge, while Safeway maintains that the Plaintiff voluntarily resigned from her position. ECF No. 22-1 at 3; ECF No. 20-1 at 16. But the parties agree that the Plaintiff concluded her tenure with Safeway on November 13, 2022. ECF No. 25-1 at 74 (Def. Ex. A, Pl. Resignation Letter); *see generally* ECF No. 22-1.

**B. Procedural Background**

The Plaintiff commenced this civil action on January 3, 2025, in the Circuit Court for Montgomery County, Maryland. ECF No. 1-1. On March 10, 2025, the case was removed to this Court. ECF No. 1.

On December 1, 2025, the Defendant filed a motion for summary judgment, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof. ECF Nos. 20 and 20-1.

On December 11, 2025, the Plaintiff filed a response in opposition to the Defendant's motion. ECF Nos. 22 and 22-1.

On December 18, 2025, the Defendant filed a reply brief. ECF No. 23. The Defendant filed exhibits in support of its motion for summary judgment on July 29, 2026. ECF No. 25-1.

The Defendant's motion for summary judgment having been fully briefed, the Court resolves the pending motion.

## III. LEGAL STANDARDS

**A. Fed. R. Civ. P. 56**

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily

renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

**B. *Pro Se* Litigants**

The Plaintiff is proceeding in this matter without the assistance of counsel. And so, the Court must construe the complaint liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980). But, in doing so, the Court cannot disregard a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented"); *Bell v. Bank of Am., N.A.*, No. 13-478, 2013 WL 6528966, at *1 (D. Md. Dec. 11, 2013) ("Although a *pro se* plaintiff is general[ly] given more leeway than a party represented by counsel . . . a district court is not obliged to ferret through a [c]omplaint . . . that is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.") (quotations and citations omitted). And so, if a plaintiff fails to allege sufficient facts setting forth a cognizable claim, the Court must dismiss the complaint.

**C. The WCA**

The Maryland Worker's Compensation Act ("WCA") provides "an employee's exclusive remedy against [her] employer" for injuries resulting from her employment and preempts tort actions against an employer. *Duckett v. XPO Logistics Freight, Inc.*, No. 24-02315, 2025 U.S. Dist. LEXIS 189687, at *4-5 (D. Md. Sep. 26, 2025) (citing Md. Code Lab. & Empl. § 9-509(a)). In this regard, the Labor and Employment article of the Maryland Code provides that, "[e]xcept as otherwise provided in this title, the compensation provided under this title to a covered

employee […] is in place of any right of action against any person." Md. Code Lab. & Empl. § 9-509(b). And so, the WCA covers work-related injuries, including injuries which are "psychological in nature if the mental state for which recovery is sought is capable of objective determination." *See Belcher v. T. Rowe Price Found., Inc.*, 621 A.2d 872, 890 (Md. 1993).

There are, however, exceptions to the exclusivity provision of the WCA: (1) "[i]f an employer fails to secure compensation in accordance with this title" or (2) "if a covered employee is injured or killed as the result of the deliberate intent of the employer to injure or kill the covered employee." Md. Code Lab. & Empl. § 9-509(c)-(d); *see also Morash v. Anne Arundel Cnty.*, No. 04-2260, 2004 U.S. Dist. LEXIS 21688, at *14-15 (D. Md. Oct. 28, 2004) ("With the exception of injuries caused by an employer's deliberate intent to injure or kill a covered employee (*i.e.*, intentional torts), the Act constitutes the exclusive method of compensation for workers injured by an employer's actions.").

**D. The ADA And MFEPA**

The Americans with Disabilities Act prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a); *Elledge v. Lowe's Home Centers, LLC*, 979 F.3d 1004, 1009 (4th Cir. 2020). The Maryland Fair Employment Practices Act also prohibits an employer from discriminating against and harassing an employee because of a disability, or retaliating against employees. *See* Md. Code, State Gov't Art. §§ 20-601, *et seq.*[4]

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that: (1) she has a disability; (2) she is a qualified individual for the employment in question; and (3) her employer discharged him or took other adverse employment action because of his disability. *Burnett v. BJ's Wholesale Club*, 722 F. Supp. 3d 566, 575 (D. Md. 2024). To establish a *prima facie* case for a failure-to-accommodate claim under the ADA, a plaintiff must show that: (1) "he was an individual who had a disability within the meaning of the statute;" (2) "the employer had notice of his disability;" (3) "with reasonable accommodation he could

[4] The MFEPA is the Maryland state analog to the ADA and Maryland courts generally treat the analysis of MFEPA claims the same as the analysis for ADA claims. *Parker v. Children's Nat'l Med. Ctr., Inc.*, No. 20-03523, 2024 WL 943438, at *21 (D. Md. Mar. 4, 2024), *aff'd*, No. 24-1207, 2025 WL 1540954 (4th Cir. May 30, 2025); *Davidson v. Sarnova, Inc.*, No. 17-1067, 2017 WL 5564654, at *4 n.3 (D. Md. Nov. 20, 2017); *Schmidt v. Town of Cheverly, Md.*, 212 F. Supp. 3d 573, 580 (D. Md. 2016).

perform the essential functions of the position;" and (4) "that the employer refused to make such accommodations." *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 626, 579 (4th Cir. 2015); *Burnett*, 722 F. Supp. 3d at 577. "[T]he denial of a request by a disabled employee could only subject the employer to liability if there is 'a causal relationship between the disability and the request for accommodation,' or, in other words, if 'the requested accommodation was *necessary* in order for [her] to perform the essential functions of [her] job.'" *Fierce v. Burwell*, 101 F. Supp. 3d 543, 550 (D. Md. 2015) (quoting *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997)) (emphasis added). In addition, this Court has held that a plaintiff bears the burden of "establishing his ability to perform the essential functions of his job with a reasonable accommodation." *Fleetwood v. Harford Sys. Inc.*, 380 F. Supp. 2d 688, 697 (D. Md. 2005) (citing *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994)).

To establish a *prima facie* case for a hostile-work-environment claim under the ADA, a plaintiff must prove that: (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer. *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001). To show that conduct was sufficiently severe or pervasive to support a hostile work environment claim, a plaintiff "must demonstrate not only that he subjectively perceived his workplace environment as hostile, but also that a reasonable person would so perceive it, *i.e.*, that it was objectively hostile." *Id.* at 178. To determine whether a reasonable person would perceive an environment as hostile, a court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999)). But evidence of mere "rude treatment" or "callous behavior" ordinarily does not suffice. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) (first quoting *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006); then quoting *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)).

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show that: (1) she engaged in protected conduct; (2) she suffered an adverse action; and (3) a causal link

exists between the protected conduct and the adverse action. *A Soc'y Without a Name v. Commonwealth of Va.*, 655 F.3d 342, 350 (4th Cir. 2011). "As a threshold matter, an employer must know of its employee's disability to act on the basis of that disability." *Sturgill v. Norfolk S. Ry. Co.*, 391 F. Supp. 3d 598, 606 (E.D. Va. 2019); *Estate of Hoffman v. Baltimore City Pub. Sch.*, No. 98-1865, 1999 WL 61965, at *1 (4th Cir. Feb. 10, 1999) (per curiam) ("An employer must be aware of an individual's disability for ADA liability to exist." (citing *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995))). In this regard, this Court has held that a plaintiff may prove that he engaged in protected conduct by showing that he "engag[ed] in oppositional conduct such as . . . voicing [his] opinion in order to bring attention to an employer's discriminatory practices." *Jackson v. S. Glazers of MD LLC*, No. 24-1393, WL 4335684, at *4 (D. Md. Sep. 26, 2024) (quotation omitted). While the plaintiff is not required to prove the discriminatory practices alleged actually constitute an ADA violation, the plaintiff must show she had a "good faith belief" that the alleged discriminatory conduct violated the ADA. *Freilich v. Upper Chesapeake Health*, 313 F.3d 205, 216 (4th Cir. 2002). And so, "[a]n employee may establish *prima facie* causation [for an ADA claim] simply by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." *Crews-Sanchez v. Frito-Lay, Inc.*, No. 22-1831, 2024 WL 469306, at *2 (4th Cir. Feb. 7, 2024) (quoting *Strothers v. City of Laurel*, 895 F.3d 317, 335-36 (4th Cir. 2018)).

Lastly Maryland courts have held that, "where a statute," like the ADA or MFEPA, "provides a special form of remedy, the plaintiff must use that form rather than any other." *Solely v. Md. Comm'n on Human Relations*, 356 A.2d 254, 257 (Md. 1976). And so, this Court has held that civil rights statutes provide the exclusive remedy for such alleged wrongs and dismissed related common law tort claims. *MacGill v. Johns Hopkins Univ.*, No. 81-2127, 1983 WL 30330, at *6 (D. Md. Apr. 14, 1983); *see also Davis v. Balt. Hebrew Congregation*, 985 F. Supp. 2d 701, 718 (D. Md. 2013) ("Under Maryland law, no state law tort claim for wrongful discharge can lie if a statute provides a remedy.").

## IV. LEGAL ANALYSIS

Safeway has moved for summary judgment on the Plaintiff's claims in this civil action, pursuant to Fed. R. Civ. P. 56, upon the following grounds: (1) the Plaintiff's common law

negligence and intentional infliction of emotional distress claims are precluded by the WCA; (2) these tort claims are also precluded, because the Plaintiff has a statutory remedy under the ADA and the MFEPA; (3) the undisputed material facts show that the Plaintiff cannot prevail on her negligence claim, because she cannot establish that the Defendant breached a duty of care; (4) the undisputed material facts show that Plaintiff cannot prevail on her intentional infliction of emotional distress claim, because she cannot show extreme or outrageous conduct, or that her emotional distress was severe; (5) the Plaintiff concedes that she cannot prevail on her tort claims, because she fails to respond to the Defendant's arguments in support of summary judgment on these claims; (6) Safeway is entitled to summary judgment as a matter of law on the Plaintiff's ADA and MFEPA failure-to-accommodate claims, because there is no evidence to show a causal relationship between the Plaintiff's disability and her request for a schedule change; (7) Safeway is entitled to summary judgment as a matter of law on the Plaintiff's ADA and MFEPA hostile work environment claims, because there is no evidence to show that the Plaintiff was subjected to harassment, due to her disability, or that the harassment was sever and pervasive; and (8) Safeway is entitled to summary judgment as a matter of law on the Plaintiff's ADA and MFEPA retaliation claims, because: (a) the Plaintiff cannot prove that she engaged in protected activity under the APA and the MFEPA; (b) there is no evidence that Ms. Lam was aware of the concerns raised during the October 2022 meeting at the time of the alleged retaliation; and (c) there is no evidence that the Plaintiff suffered a material change in the terms and conditions of her employment. ECF No. 20-1 at 13-22; ECF No. 22 at 8-9. And so, Safeway requests that the Court enter judgment summarily in its favor on all claims in this case. ECF No. 20-1 at 22.

The Plaintiff does not directly respond to many of the arguments raised by Safeway in her response in opposition to Safeway's dispositive motion. But the Plaintiff counters that summary judgment is not warranted on her ADA and MFEPA claims, because: (1) she is an individual with a qualified disability; (2) Safeway discriminated against her because of her disability; (3) Safeway failed to provide reasonable accommodations; (4) she was subjected to a hostile work environment; (5) Safeway retaliated against her for engaging in protected activity; and (6) she was constructively discharged. ECF No. 22-1 at 5. And so, the Plaintiff requests that the Court deny Safeway's motion for summary judgment. *Id*. at 6.

For the reasons that follow, the undisputed material facts show that Plaintiff cannot prevail on her negligence and intentional infliction of emotional distress claims, because these claims are precluded by the WCA and by the ADA and the MFEPA. The undisputed material facts also show that the Plaintiff cannot prevail on her ADA and MFEPA failure-to-accommodate claims, because the Plaintiff's request for a schedule change was not related to her disability.

In addition, the undisputed material facts show that the Plaintiff cannot prevail on her ADA and MFEPA hostile work environment claims, because the Plaintiff fails to advance evidence to show that the alleged harassment was based on her disability. Lastly, the undisputed material facts show the Plaintiff cannot prevail on her ADA and MFEPA retaliation claims, because she did not engage in protected activity during the October 2022 meeting. And so, the Court: (1) **GRANTS** the Defendant's motion for summary judgment (ECF No. 20); (2) **ENTERS JUDGMENT** summarily in favor of the Defendant on the Plaintiff's claims; (3) **DENIES-as-MOOT** the Plaintiff's motion for status update (ECF No. 24); and (4) **DISMISSES** the complaint.

### A. Summary Judgment Is Warranted On The Plaintiff's Tort Claims

As an initial matter, the Court agrees with Safeway that summary judgment is warranted on the Plaintiff's common law tort claims in this matter, because these claims are precluded by the WCA, the ADA and the MFEPA.

First, the Plaintiff's common law tort claims are precluded by the WCA. The WCA provides "an employee's exclusive remedy against [her] employer" for injuries resulting from her employment and the statute preempts tort actions against an employer, including tort claims for work-related injuries which are "psychological in nature if the mental state for which recovery is sought is capable of objective determination." *Duckett v. XPO Logistics Freight, Inc.*, No. 24-02315, 2025 U.S. Dist. LEXIS 189687, at *4-5 (D. Md. Sep. 26, 2025) (citing Md. Code Lab. & Empl. § 9-509(a)); *see also Belcher v. T. Rowe Price Found., Inc.*, 621 A.2d 872, 890 (Md. 1993). In this case, the Plaintiff asserts negligence and intentional infliction of emotional distress claims that arise from her alleged mistreatment and harassment in the workplace, due to her disability. *See generally* ECF No. 3; ECF No. 22-1 at 2-3 (alleging that the Plaintiff suffered injuries including panic attacks, because of Safeway's discrimination and retaliation in the workplace). Given this, the Plaintiff's alleged injuries are work-related.

There is also no evidence before the Court to show that Safeway failed to secure compensation in accordance with the WCA, or that Safeway's employees acted with "deliberate intent" to injure the Plaintiff and cause her alleged injuries. Md. Code Lab. & Empl. § 9-509(c)-(d); *see also Morash v. Anne Arundel Cnty.*, No. 04-2260, 2004 U.S. Dist. LEXIS 21688, at *14-15 (D. Md. Oct. 28, 2004). Given this, the Plaintiff's tort claims are precluded by the WCA. *Duckett*, 2025 U.S. Dist. LEXIS 189687, at *4-5; *Belcher*, 621 A.2d at 890.

The Plaintiff's tort claims are also precluded by the ADA and the MFEPA, because these statutes provide a special form of remedy for her disability discrimination and retaliation claims. Notably, the ADA and MFEPA both prohibit an employer from discriminating or retaliating against an employee, due to a disability, and these statutes provide remedies for such conduct. *See* 42 U.S.C. §§ 12111-12117 and 12203; Md. Code, State Gov't Art. §§ 20-601, *et seq.* Given this, the Plaintiff cannot pursue her tort claims in this case, because these claims can be addressed and remedied under the ADA and the MFEPA. *See MacGill v. Johns Hopkins Univ.*, No. 81-2127, 1983 WL 30330, at *6 (D. Md. Apr. 14, 1983) (holding that civil rights statutes provide the exclusive remedy for such alleged wrongs, dismissing common law tort claims); *see also Davis v. Balt. Hebrew Congregation*, 985 F. Supp. 2d 701, 718 (D. Md. 2013) (same); *Solely v. Md. Comm'n on Human Relations*, 356 A.2d 254, 257 (Md. 1976) (holding that "where a statute," like the ADA or MFEPA, "provides a special form of remedy, the plaintiff must use that form rather than any other"). And so, for the aforementioned reasons, the Court GRANTS Safeway's motion for summary judgment on the Plaintiff's negligence (Count I) and intentional infliction of emotional distress (Count II) claims. Fed. R. Civ. P. 56.[5]

### B. Safeway Is Entitled To Summary Judgment On The Plaintiff's Disability Discrimination And Retaliation Claims

Turning to the Plaintiff's ADA and MFEPA disability discrimination claims, the undisputed material facts show that the Plaintiff cannot prevail on these claims. And so, for the reasons discussed below, the Court GRANTS Safeway's motion for summary judgment on these claims.

[5] Because the Plaintiff's tort claims are precluded by the WCA, the ADA and the MFEPA, the Court does not address Safeway's other arguments regarding these claims.

**1. The Plaintiff Cannot Prevail On Her Failure-To-Accommodate Claims**

First, Safeway persuasively argues that the undisputed material facts in this case show that the Plaintiff cannot prevail on her failure-to-accommodate claims in this case, because she cannot establish a connection between her accommodation request and her disability. To establish a *prima facie* case for a failure-to-accommodate under the ADA, the Plaintiff must show that: (1) she "was an individual who had a disability within the meaning of the statute;" (2) "the employer had notice of [her] disability;" (3) "with reasonable accommodation [she] could perform the essential functions of the position;" and (4) "that the employer refused to make such accommodations." *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 626, 579 (4th Cir. 2015); *Burnett v. BJ's Wholesale Club*, 722 F. Supp. 3d 566, 577 (D. Md. 2024). In this regard, this Court has held that a denial of a reasonable accommodation request may only subject the employer to liability, if there is a causal relationship between the disability and the request for accommodation. *Fierce v. Burwell*, 101 F. Supp. 3d 543, 550 (D. Md. 2015) (quoting *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997)) (emphasis added).

In this case, the undisputed material facts show that the Plaintiff's October 4, 2022, request for a change to her work schedule was not connected to her disability. The undisputed material facts show that, on October 4, 2022, the Plaintiff sent a note to her supervisor, Ms. Lam, requesting an adjustment to her scheduled work hours so that she could work a second job to make additional money to care for her mother. ECF No. 11 at 38. Notably, the Plaintiff states in this note that: "I need extra money to take care of my mother." *Id.*

The undisputed material facts also show that the Plaintiff met with Ms. Gayle during a meeting held in October 2022, and that she requested changes to her work schedule at that time, so that she could work two jobs and afford to pay for her dental care. ECF No. 25-1 at 36-37 (Def. Ex. 1, Pl. Dep. at 33:12-34:3) (The Plaintiff testifying that she needs a schedule change, "so that I can work two jobs and afford to pay my dental.").

In sum, the undisputed material facts make clear that the Plaintiff's requests for a change to her work schedule were due to her financial needs, rather than her disability. Given this, the Plaintiff cannot show a causal relationship between her requests for a schedule change and her disability, to prevail on her failure-to-accommodate claims. *Fierce*, 101 F. Supp. 3d at 550. And so, the Court GRANTS Safeway's motion for summary judgment on these claims. Fed. R. Civ. P. 56.

**2. The Plaintiff Cannot Prevail On Her Hostile Work Environment Claims**

The undisputed material facts also show that the Plaintiff cannot prevail on her hostile work environment claims in this case, because she was not subjected to harassment based on her disability. To establish a *prima facie* case for a hostile-work-environment claim under the ADA, the Plaintiff must prove that: (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer. *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001). And so, to prevail on this claim, the Plaintiff must show, among other things, that the harassment at issue here was based on her disability.

In this case, the unrebutted evidence makes clear that the Plaintiff cannot make such a showing. The Plaintiff alleges that, beginning in July 2022, she was subjected to "escalating harassment and abusive behavior" by Ms. Lam, which included snatching tools from her, humiliation, criticism, micromanaging and targeting the Plaintiff after disclosure of her disability. ECF No. 22-1 at 2. But the Plaintiff points to no evidence to show that Ms. Lam's alleged harassing conduct was based on, or motivated by, her disability. *See generally* ECF Nos. 22 and 22-1.

Nor does the Plaintiff put forward any evidence to show that Ms. Lam, or any of her other supervisors, assigned her work tasks due to her disability. *See generally* ECF Nos. 22 and 22-1. Rather, the undisputed material facts show that the Plaintiff's work assignments, which include cleaning the kitchen area and cooking utensils, were typical assignments for employees of Safeway's Deli Department. ECF No. 25-1 at 20-21 (Def. Ex. 1, Pl. Dep. at 17:17-18:8) (the Plaintiff testifying that her duties as a deli associate included cleaning the kitchen area and cooking utensils).[6]

[6] Safeway also argues with persuasion that the Plaintiff cannot adduce evidence to show that the alleged harassment was severe and pervasive. The Plaintiff alleges that Ms. Lam left to-do lists for employees on occasion, ECF No. 25-1 at 40 (Def. Ex. 1, Pl. Dep. at 37:13-16), and that Ms. Lam: (1) was intimidating, rude and harassing her; (2) throwing things in the sink next to her; (3) making loud shattering noises. *Id.* at 39 (Def. Ex. 1, Pl. Dep. at 36:6-13); ECF No. 11, Pl. Ex., at 35-36 (a letter from Terrylee Price of Vocational Support Systems dated March 29, 2024, stating that the Plaintiff said to Ms. Price on October 25, 2022, that she was being "treated unfairly" and was "belittled and disparaged" by Ms. Lam and requested a meeting with Ms. Gayle to express these concerns). The Plaintiff also alleges that Ms. Lam followed her around in the Deli and caused her to drop things. ECF No. 25-1 at 39 (Def. Ex. 1, Pl. Dep.

Given this, the unrebutted evidence does not establish a connection between the alleged harassment by Ms. Lam and the Plaintiff's disability. *Fox*, 247 F.3d at 177. And so, the Court also GRANTS Safeway's motion for summary judgment on the Plaintiff's hostile work environment claims. Fed. R. Civ. P. 56.

**3. The Plaintiff Cannot Prevail On Her Retaliation Claims**

While a somewhat closer question, the undisputed material facts in this case also show that the Plaintiff cannot prevail on her ADA and MFEPA retaliation claims, because she did not engage in protected activity during the October 2022 meeting. To establish a *prima facie* case of retaliation under the ADA, the Plaintiff must show that: (1) she engaged in protected conduct; (2) she suffered an adverse action; and (3) a causal link exists between the protected conduct and the adverse action. *A Soc'y Without a Name v. Commonwealth of Va.*, 655 F.3d 342, 350 (4th Cir. 2011). And so, to prevail on her retaliation claims in this case, the Plaintiff must be able to show, among other things, that she engaged in protected conduct during the October 2022 meeting, and that a causal link exists between her protected conduct and the subsequent Oven Cleaning Assignment. *Id.*

Again, the unrebutted evidence shows that the Plaintiff cannot meet her burden in this case. The Plaintiff contends that she engaged in protected activity during the October 2022, meeting with Ms. Gayle and that, thereafter, Safeway retaliated against her when Ms. Lam requested that she clean the chicken rack and the tray for the Bakery Department's oven. ECF No. 25-1 at 41-44 (Def. Ex. 1, Pl. Dep. at 38:5-39:10, 40:3-13 and 40:18-41:8). While the evidence does not establish the exact date when the Plaintiff received the Oven Cleaning Assignment, the parties do not dispute that this assignment occurred after the October 2022 meeting. *See generally* ECF Nos. 20-1, 22-1 and 25-1. And so, the chronology of these events could support the Plaintiff's retaliation claims.

The Court agrees, however, with Safeway that the undisputed material facts do not show that the Plaintiff engaged in ADA-protected activity during the October 2022 meeting. The unrebutted evidence shows that the Plaintiff requested changes to her work schedule, so that she

---

at 36:14-20). But there is no evidence to show the frequency of this alleged conduct, or how this conduct impacted the Plaintiff's work performance. Given this, the evidence, at best, shows "rude treatment" or "callous behavior" that does not suffice to make out a hostile work environment claim. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) (first quoting *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006); then quoting *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)).

could work two jobs and afford to pay for her dental care during the October 2022 meeting. ECF No. 25-1 at 36-37 (Def. Ex. 1, Pl. Dep. at 33:12-34:3) (The Plaintiff testifying that she needs a schedule change, "so that I can work two jobs and afford to pay my dental."). The unrebutted evidence also shows that the Plaintiff raised concerns about alleged mistreatment and harassment by Ms. Lam during this meeting. *Id.* at 39 (Def. Ex. 1, Pl. Dep. at 36:6-13); ECF No. 11, Pl. Ex., at 35-36. But the undisputed material facts do not show that the Plaintiff connected any of her concerns to her disability. ECF No. 25-1 at 39 (Def. Ex. 1, Pl. Dep. at 36:6-13) (The Plaintiff testifying that Ms. Lam "has been very rude and harassing me within the deli, throwing things in the adjacent sink next to me, making loud shattering noises, like, intimidation"); ECF No. 11, Pl. Ex., at 35-36 (a letter from Terrylee Price of Vocational Support Systems dated March 29, 2024, stating that the Plaintiff said to Ms. Price on October 25, 2022, that she was being "treated unfairly" and was "belittled and disparaged" by Ms. Lam and requested a meeting with Ms. Gayle to express these concerns). In fact, Ms. Gayle states in her sworn declaration that the Plaintiff: (1) never expressed concern about being treated differently because of a disability; (2) never told her that Ms. Lam was giving the Plaintiff poor assignments because of a disability; (3) never told her that there was a medical reason that required a change in the Plaintiff's work schedule or duties; and (4) never told her that Ms. Lam's interactions with the Plaintiff were triggering panic attacks or anxiety. ECF No. 25-1 at 68-69 (Def. Ex. 2, Gayle Decl. at ¶¶ 15-18).

While the Plaintiff points to certain statements by LaVita Sterling providing, among other things, that the Plaintiff requested the October 2022, meeting to speak with Ms. Gayle about concerns she was having about work hours, disability needs and unfair treatment, Ms. Sterling's statements do not show that the Plaintiff actually connected her concerns about harassment and mistreatment in the workplace to her disability, during the October 2022, meeting.[7] ECF No. 22-6 at 22. In fact, the Plaintiff does not put forward any evidence to show

[7] The evidence shows that an individual from a disability organization accompanied the Plaintiff to the October 2022, meeting. ECF No. 25-1 at 68 (Def. Ex. 2, Gayle Decl. at ¶ 9) (Ms. Gayle stating in her declaration that Ms. Johnson was accompanied to the October 2022, meeting by a man from a disability organization); *see also* ECF No. 22-6 at 22 (letter from Ms. Sterling dated March 28, 2024, stating that Terrylee Price from Vocational Support Systems attended the October 2022, meeting). But Ms. Gayle states in her sworn declaration that she had not meet this individual beforehand and was not aware of the Plaintiff's affiliation with the disability organization. ECF No. 25-1 at 68 (Def. Ex. 2, Gayle Decl. at ¶ 9). There is also no evidence before the Court to show that this individual raised the Plaintiff's disability during the October 2022, meeting. *See generally* ECF Nos. 11, 20-1, 22, 22-1 and 25-1.

that Safeway was even aware of her disability at the time of this meeting. *See generally* ECF Nos. 11, 22 and 22-1.

The Plaintiff's reliance upon a letter from her therapist, Angela Williams, LCPC, to show that such a connection exists is also misplaced. Ms. Williams' letter describes a conversation that she had with the Plaintiff on November 3, 2022, regarding the Plaintiff's anxiety after having received the Oven Cleaning Assignment. ECF No. 22-6 at 21. But this letter does not show that the Plaintiff raised her disability, or made a reasonable accommodation request, during the October 2022, meeting. *See id.* And so, the undisputed material facts show that the Plaintiff did not engage in protected activity during the October 2022, meeting.

Given this, the Plaintiff cannot prevail on her disability-based retaliation claims. *A Soc'y Without a Name*, 655 F.3d at 350. And so, the Court also GRANTS Safeway's motion for summary judgment on these final claims. Fed. R. Civ. P. 56.

## V. CONCLUSION

In sum, the undisputed material facts in this case show that the Plaintiff cannot prevail on her common law tort and disability discrimination and retaliation claims under the ADA and the MFEPA. The Plaintiff also has not advanced any evidence to show that there is a genuine dispute of material fact in this case that would preclude entry of summary judgment on these claims. And so, for the foregoing reasons, the Court:

(1) **GRANTS** the Defendant's motion for summary judgment (ECF No. 20);

(2) **ENTERS JUDGMENT** summarily in favor of the Defendant on the Plaintiff's claims;

(3) **DENIES-as-MOOT** the Plaintiff's motion for status update (ECF No. 24); and

(4) **DISMISSES** the complaint.

The Court issued a separate Order consistent with this Memorandum Opinion on September 4, 2026.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge